FILED
2012 Sep-13  PM 02:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SANDRA JONES, as personal representative of, and on behalf of the survivors of, CHRIS JONES, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. CV-12-S-96-NW |
| vs. | ) ) | |
| NATHAN SHIP and MICHAEL MAHER, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sandra Jones, is the widow of Chris Jones, deceased, who allegedly was shot and killed by Albertville, Alabama Police Officers Nathan Ship ("Officer Ship") and Michael Maher ("Officer Maher") (collectively, "the Officers") during a police pursuit that occurred on March 21, 2011.[1]  She commenced his suit in a representative capacity, as personal representative of her decedent's estate.  Her original complaint asserted constitutional claims against the Officers, their employer,

---

[1] *See* doc. no. 1  (Complaint filed January 11, 2012) ¶ 3-7.  While plaintiff spells Officer Michael Maher's last name as "Maher," defendants spell his last name, variously, as "Maher," "Mahr," or "Mayer."  *Compare, e.g.,* doc. no. 1 (spelled as "Maher"); doc. no. 15 (Brief in Support of Motion to Dismiss by Michael Maher and Nathan Ship), at 2 (spelled as "Maher"); *id.* at 1 (spelled as "Mahr"); *id.* at 6 (spelled as "Mayer").  Because that officer's last name was spelled as "Maher" in the first document filed in this case, and is, therefore, in the official caption of this case, this court will call him "Officer Maher," with apologies if this is incorrect.

the City of Albertville ("the City"), and their supervisor, Albertville Police Chief Doug Pollard ("Chief Pollard").[2]  All parties filed motions to dismiss plaintiff's claims,[3] as well as motions to stay discovery and all other proceedings during the pendency of their motions to dismiss.[4]  This court granted plaintiff's consent motion to dismiss her claims against the City and Chief Pollard without prejudice,[5] leaving two claims against Officers Ship and Maher: *i.e.*, an excessive force claim under 42 U.S.C. § 1983;[6] and a wrongful death claim under state law.  *See* Ala. Code § 6-5-410 (1975).[7]  The following opinion addresses the Officers' motion to dismiss based on the doctrine of qualified immunity, which will be denied for the reasons explained below.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be

---

[2] *See* doc. no. 1 ¶ 15-33.

[3] *See* doc. no. 7 (Motion to Dismiss by City of Albertville); doc. no. 9 (Motion to Dismiss by Doug Pollard); doc. no. 14 (Motion to Dismiss by Michael Maher and Nathan Ship).

[4] *See* doc. no. 11 (Motion to Stay Discovery and Temporarily Suspend Obligations Under Fed.R.Civ.P.26 Pending Resolution of Motions to Dismiss by the City of Albertville and Doug Pollard); doc. no. 16 (Joinder in Motion to Stay Discovery and Contemporaneously Suspend Obligations Under F.R.C.P 26 Pending Resolution of Motions to Dismiss by Michael Maher and Nathan Ship); doc. no. 23 (Order that Motion to Stay is Granted).

[5] *See* doc. no. 21 (Order Dismissing Fewer than All Defendants).

[6] *See* doc. no. 1 ¶ 25-28.

[7] *Id.* ¶ 15-17.

granted." Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a),

which requires that a pleading contain only a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While that

pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.*

*v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citations omitted).

> To survive a motion to dismiss founded upon Federal Rule of
> Civil Procedure 12(b)(6), for failure to state a claim upon which relief
> can be granted], a complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that is plausible on its face."
> *Id*., at 570.  A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged.  *Id*., at 556.  The
> plausibility standard is not akin to a "probability requirement," but it
> asks for more than a sheer possibility that a defendant has acted
> unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line between
> possibility and plausibility of 'entitlement to relief.'"  *Id*., at 557
> (brackets omitted).

*Iqbal*, 556 U.S. at 678.

For many years, the Eleventh Circuit applied a heightened pleading standard

to claims asserted under § 1983 against individual police officers.  *See*, *e.g*., *GJR*

*Investments, Inc. v. County of Escambia, Fla*., 132 F.3d 1359 (11th Cir. 1998)

(observing that "this circuit . . . has tightened the application of Rule 8 with respect

to § 1983 cases in an effort to weed out nonmeritorious claims").  Even so, the

Circuit's later opinion in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), backed away

from that position, and held that utilization of such a pleading standard is no longer

warranted, in light of the plausibility requirement articulated in *Iqbal*.

> [Even though] the *Iqbal* opinion concerns Rule 8(a)(2) pleading standards *in general*, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights.  The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion.  The Supreme Court held, citing *Twombly*, that the legal conclusions in a complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss.  The Court did not apply a heightened pleading standard.

> While *Swann* [*v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004)] , *GJR*, and *Danley* [*v. Allen*, 540 F.3d 1298 (11th Cir. 2008)] reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree . . . that *those cases were effectively overturned* by the *Iqbal* court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*.  A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations.   The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.

*Randall*, 610 F.3d 709-10 (bracketed alterations and emphasis supplied).

## II.  FACTS AS ALLEGED[8]

Plaintiff's terse statement of facts reads as follows:

3.  On March 21, 2011, Chris Jones was pursued in his truck by Nathan Ship ("Ship") and Michael Maher ("Maher").

4.  At all times relevant to this Complaint, Ship and Maher were working as agents, specifically as on-duty police officers, for the City of Albertville ("Albertville").

5.  Following the pursuit, the truck driven by Chris Jones was stopped and prevented from [traveling] any further.

6.  Ship and/or Maher fired more than 20 shots into Chris Jones's truck.

7.  Several rounds struck Chris Jones, and he died as a result of those gunshot wounds.[9]

## III.  DISCUSSION

### A.    Excessive Force Under § 1983

_____

[8] As always is the case in the context of ruling upon a motion to dismiss, especially one based upon a contention of qualified immunity, this court

must assume the facts set forth in the plaintiffs' complaint are true.  *See Anza* [*v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453,] 126 S. Ct.[1991,] 1994 (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true").  Because we must accept the allegations of plaintiffs' complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

[9] Doc. no. 1 ¶ 3-7 (alteration supplied).

In response to plaintiff's claim for excessive force under § 1983,[10] the Officers urge this court to grant the motion to dismiss on two separate grounds: first, that plaintiff has failed to plead sufficient facts to support an excessive force claim; and second, that the Officers are entitled to qualified immunity from such a claim.[11]  At this point in the proceedings, this court is unable to accept either argument.

### 1.    Was the Officers' use of force objectively unreasonable?

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."  *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).  Analysis of an excessive force claim requires a court to examine "whether the officer's conduct [was] objectively reasonable in light of the facts confronting the officer."  *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (alteration supplied).  However, the Supreme Court has made plain that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The "reasonableness standard" requires the court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.*

---

[10] *Id.* ¶ 25-28.

[11] Doc. no. 15, at 3.

6

"In determining whether the use of force was reasonable, factors to consider include:  (1) 'the severity of the crime at issue'; (2) 'whether the suspect poses an immediate threat to the safety of the officers or others'; and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Lloyd v. Van Tassell*, 318 Fed. Appx. 755, 757 (11th Cir. 2009) (quoting *Graham*, 490 U.S. at 396).  Also relevant to this determination are "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Lee*, 284 F.3d at 1198 (citing *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986)).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007) (internal citation and quotation marks omitted).  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "'[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  The objective reasonableness determination "must embody allowance for the fact that police officers are often

forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard*, 311 F.3d at 1346 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The threshold question in determining whether an officer is entitled to qualified immunity is whether he was "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (citation and internal quotation marks omitted). Once this is demonstrated, as it undisputably is in this action, the court must ask: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Even if this inquiry is answered in the affirmative, law enforcement officers will nonetheless be entitled to qualified immunity "unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant

8

officials were doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002).

Under the *Vinyard* "reasonableness standard," this court is unable to hold that plaintiff has failed to state an excessive force claim as a matter of law at this point in the proceedings.  Plaintiff alleges that Chris Jones "was stopped and prevented from [traveling] any further" when one or both of the Officers fired over twenty gunshots into his truck.[12]  Because this court is required to consider *only* the allegations in the complaint, it must assume that plaintiff was restrained and subdued, not actively threatening the Officers or resisting arrest.  If that was the case, then firing over twenty shots into his truck far exceeded the force necessary to effect a lawful arrest.  Thus, plaintiff has succeeded in pleading that the Officers' use of force was not objectively reasonable in violation of his Fourth Amendment rights.

### 2.   Did the Officers' use of force violate clearly established law?

Having held the Officers' use of force objectively unreasonable, this court must still ask whether the law was sufficiently clearly established to withdraw the shield of qualified immunity.  A plaintiff can show that an officer's use of force violated clearly established law in two ways:  (1) "a controlling and materially similar case [that] declares the official's conduct unconstitutional;" or (2) "the official's conduct lies so

---

[12] Doc. no. 1 ¶ 5-6 (alteration supplied).

obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (internal citation and quotation marks omitted).  As plaintiff does not seem to satisfy the first prong of the *Priester* test because the cases she cites are not controlling,[13] this court could deny the Officers qualified immunity only if their actions went "so far beyond the hazy border between excessive and acceptable force that [they] had to know [that they were] violating the Constitution even without caselaw on point." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (alterations supplied).  "This test entails determining whether application of the excessive force standard would inevitably lead every reasonable officer in the Defendants' position to conclude the force was unlawful." *Priester*, 208 F.3d at 926-27 (citation, brackets, and internal quotation marks omitted) (alteration in original).  Based purely upon the facts plaintiff alleges, the court must hold that the Officers are not entitled to qualified immunity at the motion to dismiss stage of this action.

This decision is bolstered by several cases in which the Eleventh Circuit has

---

[13] Under the second prong of the *Priester* test, this court may recognize controlling authority from the United States Supreme Court, the Eleventh Circuit, and the Alabama Supreme Court.  *See Marsh v. Butler County*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001).  Here, plaintiff relies largely on authority from outside this Circuit: *e.g.*, *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005); *Brockington v. Boykins*, 637 F.3d 503 (4th Cir. 2011); and *Parks v. City of Chicago*, 2011 U.S. Dist. LEXIS 103832 (N.D. Ill. Sept. 14, 2011).

determined that the application of force to an arrestee *after* he has been subdued is significantly more likely to violate the Fourth Amendment standards.  In *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), a plaintiff who had previously fled and threatened officers with a baseball bat ultimately voluntarily lay upon the ground and surrendered.  *Id.* at 1418.  Taking the facts in the light most favorable of the plaintiff, the court found that the plaintiff was "offering no resistance at all" and, thus, that a use of force that broke the plaintiff's arm was "obviously unnecessary to restrain even a previously fractious arrestee." *Id.* at 1420.  Similarly, in *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002), an officer stopped a woman over for improperly honking her horn, pulled her out of her vehicle and handcuffed her.  *Id.* at 1198.  Although she then posed no risk to the officer or risk of flight, the officer slammed her head against the trunk of her car.  *Id.*  This constituted excessive force, and the officer was not entitled to qualified immunity because the law was sufficiently clearly established that all reasonable officers would have known the force was unconstitutionally excessive. *Id.* at 1198-99.  In determining that qualified immunity was not available, the Eleventh Circuit stated "the clear and obvious principle that once an arrest[ee] has been fully secured and any potential danger or risk of flight vitiated, a police officer cannot employ the severe and unnecessary force allegedly used here." *Id.* at 1200 (alteration supplied).

11

While the facts that come to light in discovery may ultimately tell a different tale, this court holds that plaintiff has stated a claim for using excessive force in violation of clearly established law.  Again, plaintiff alleges that Chris Jones "was stopped and prevented from [traveling] any further" when one or both of the Officers fired over twenty gunshots into his truck.[14]  Because this court can infer that a suspect who was stopped and immobilized was not actively threatening the Officers or resisting arrest, the act of firing over twenty shots into his truck was so excessive that the Officers were sufficiently on notice of its unconstitutionality to deprive them of qualified immunity.  Accordingly, this court must deny their motion to dismiss.

## B.    Wrongful Death Under Alabama Law

In response to plaintiff's state-law claim for wrongful death,[15] the Officers raise the defense of "peace officer/state agent immunity."[16]  To determine whether a particular plaintiff has a viable assault claim, the district court must examine the doctrine of "discretionary function immunity," defined by an Alabama statute reading as follows:

> Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, . . . and whose duties prescribed by law, or by the

---

[14] Doc. no. 1 ¶ 5-6 (alteration supplied).

[15] *See id.* ¶ 15-17.

[16] Doc. no. 15, at 14.

lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, *and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties*.

Alabama Code § 6-5-338(a) (1975) (emphasis supplied); *see also Sheth v. Webster*, 145 F.3d 1231, 1236-38 (11th Cir. 1998) (holding that Alabama's discretionary function immunity, like the qualified immunity applicable to claims based upon 42 U.S.C. § 1983, provides law enforcement officers immunity from the burdens and expenses of vexatious suits, and not merely a defense to liability at trial).

The first step in a discretionary function analysis is to determine whether the police officer whose conduct is challenged was engaged in the performance of a discretionary function at the time the alleged tort occurred. *See Scarbrough v. Myles*, 245 F.3d 1299, 1303 n.9 (11th Cir. 2001); *Sheth,* 145 F.3d at 1238. The term "discretionary acts" has been defined as "those acts to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Ex parte City of Montgomery*, 758 So. 2d 565, 569 (Ala. 1999) (quoting *Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996)); *see also L.S.B. v. Howard*, 659

13

So. 2d 43, 44 (Ala. 1995).  If the officer was performing a discretionary act, the burden shifts to the plaintiff to demonstrate that the officer acted willfully, with malice or in bad faith.  *See Sheth*, 145 F.3d at 1239.  "Acts of such nature are not considered by Alabama law to be discretionary."  *Wright v. Wynn*, 682 So. 2d at 2; *see also Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala. 1998) (holding that discretionary function immunity insulates law enforcement officers from tort liability, "unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith").

Ultimately, "the core issue" under both Alabama and federal law is "whether a defendant violated clearly established law." *Sheth*, 145 F.3d at 1239 (citations omitted); *see also id.* at 1240 (observing that "[t]he Alabama Supreme Court has equated qualified immunity with discretionary function immunity.") (footnote omitted).

Generally, a motion to dismiss on grounds of state-agent immunity is premature.

> "'[A] motion to dismiss is typically not the appropriate vehicle by which to assert . . . State-agent immunity and . . . normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, *following appropriate discovery*.'" *Ex parte Alabama Dep't of Youth Servs.*, 880 So. 2d 393, 398 (Ala. 2003) (emphasis added) (quoting *Ex parte Alabama Dep't of Mental Health & Mental Retardation*, 837 So. 2d 808, 813-14 (Ala. 2002)). This is so because the question whether a State agent was acting

"willfully, maliciously, fraudulently, in bad faith," or was not "exercising . . . judgment in the manner set forth in the examples in *Cranman*," *Howard* [*v. City of Atmore*], 887 So. 2d [201,] 205 [(Ala. 2003)], is generally fact specific. *See Ex parte City of Tuskegee*, 932 So. 2d 895, 908 (Ala. 2005); *Ex parte Alabama Dep't of Mental Health & Mental Retardation*, *supra*. Also, in reviewing the grant or denial of a motion to dismiss, the question "'is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief.'" *Ex parte Alabama Dep't of Youth Servs.*, 880 So. 2d at 398 (quoting *Nance v. Matthews*, 622 So. 2d 297, 299 (Ala. 1993)).

*Ex parte Dangerfield*, 49 So. 3d 675, 682-83 (Ala. 2010) (emphasis in original, alterations supplied).

In *Dangerfield*, the plaintiffs challenged the officials' decision to execute a search warrant upon their dealership, *id.* at 677, which satisfied the *Cranman* standard for conferring immunity on officials exercising judgment while engaged in enforcement. *See Cranman*, 792 So. 2d at 405. Nevertheless, the court upheld an order denying the officials' motion to dismiss those claims on official immunity grounds because plaintiffs alleged that the officials acted willfully, wantonly, maliciously, and in bad faith, and because "there has yet been no discovery and, therefore, no development of facts central to the State-agent-immunity defense." *Dangerfield*, 49 So. 3d at 683.

Likewise, in *Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176 (M.D. Ala. 1999), the plaintiff challenged, *e.g.*, an officer's "decisions to arrest the Plaintiff, use

force against him, transport him to the county jail, and bring charges against him" for preaching in public. *Id.* at 1195. In holding that the officer had borne his burden of proving that plaintiff's claims arose from a function that entitled him to immunity, the *Hardy* court reasoned that "[a]ll of these acts typically are within the line and scope of the officers' law enforcement duties and require the exercise of judgment under the given circumstances." *Id.* However, the court denied the officer's motion to dismiss those claims because the complaint stated that

> "all of the acts, conduct, and behavior of each of the Defendants, were performed knowingly, intentionally, and maliciously. . . ." Compl. P 62.
>
> Accordingly, because [the plaintiff] asserts that the Defendants possessed the requisite state of mind to defeat application of discretionary function immunity, [the plaintiff] may pursue all of his state law claims against [the officer].
>
> Defendants are free to renew their contention that discretionary function immunity bars the Plaintiff's state tort claims in a motion for summary judgment. At the summary judgment stage, Plaintiff would have to produce evidence showing that the Defendants acted willfully, maliciously, or in bad faith.

*Id.* at 1195.

Unlike the plaintiffs in *Dangerfield* and *Hardy*, plaintiff here does not *explicitly* allege that the Officers acted willfully, wantonly, maliciously, or in bad faith. Nevertheless, this court must accept as true plaintiff's allegation that Chris Jones "was stopped and prevented from [traveling] any further" when one or both of the Officers

fired over twenty gunshots into his truck.[17]   If that was the case, then the Officers' behavior were so excessive that this court can *infer* willfulness, wantonness, malice, and bad faith.   As the parties have not engaged in discovery, plaintiff has yet to receive the chance to prove her claims.   Thus, this court must deny the Officers' motion to dismiss and leave them free to renew their immunity arguments at summary judgment.

### IV.  CONCLUSION AND ORDER

For the reasons explained above, the motion to dismiss is DENIED.  As a result, this court hereby dissolves the stay previously entered in this action, and directs the parties to resume the discovery process forthwith, consistent with the Federal Rules of Civil Procedure.

DONE and ORDERED this 12th day of September, 2012.

_____
United States District Judge

---

[17] Doc. no. 1 ¶ 5-6 (alteration supplied).

17